**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant<br><br>v.<br><br>BERNARD MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendants. | Adv. Pro. No. 08-1789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Debtor. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>v.<br><br>ALPHA PRIME FUND LIMITED, *et al.*<br><br>        Defendants. | Adv. Pro. No. 09-01364 (BRL)<br><br>Case No.<br>11-CV-06677 (JSR) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF ALPHA PRIME FUND LIMITED AND SENATOR FUND SPC TO WITHDRAW THE REFERENCE**

ANDERSON KILL & OLICK, P.C.
Todd E. Duffy, Esq.
Dennis J. Nolan, Esq.
1251 Avenue of the Americas
New York, New York 10020
(212) 287-1000
*Attorneys for Defendants Alpha Prime*
*Fund Limited and Senator Fund SPC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.    THIS COURT MUST ENGAGE IN SIGNIFICANT INTEPRETATION OF WHETHER SIPA CONFLICTS WITH SECTION 546(e) OF THE BANKRUPTCY CODE ............................................................................. 2

    II.    THIS COURT MUST ENGAGE IN SIGNIFICANT INTEPRETATION OF WHETHER SIPA OR OTHER FEDERAL SECURITIES LAW IMPOSES A RETROACTIVE DUE DILIGENCE OBLIGATION ................. 6

    III.    THIS COURT MUST ENGAGE IN SIGNIFICANT INTEPRETATION OF SIPA TO DETERMINE WHETHER DEFENDANTS' CUSTOMER CLAIMS SHOULD BE DISALLOWED .................................. 8

    IV.    NEITHER ALPHA PRIME AND SENATOR'S FILING OF SIPA CUSTOMER CLAIMS NOR THE EXISTENCE OF "CORE" ISSUES BARS WITHDRAWAL OF THE REFERENCE .......................................... 8

CONCLUSION ................................................................................................................ 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Corp. v. Gredd*,
   01 Civ. 4379, 2001 WL 840187 (S.D.N.Y. July 25, 2001) .......................................... 9

*In re Adelphia Commc'ns Corp.*,
   No. 03 MDL 1529 (LMM), 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006) ...................... 9

*In re Boston Generating, LLC*,
   10 Civ. 6528 (DLC), 2010 WL 4288171 (S.D.N.Y. Nov. 1, 2010) ............................... 8

*In re Chateaugay Corp.*,
   108 B.R. 27 (S.D.N.Y. 1989) ....................................................................................... 9

*In re Dana Corp.*,
   379 B.R. 449 (S.D.N.Y. 2007) ..................................................................................... 9

*Picard v. Flinn Invs.*,
   LLC, No. 11 Civ. 5223 (JSR), 2011 WL 5921544 (S.D.N.Y. Nov. 28, 2011) ..... passim

*Picard v. HSBC Bank PLC*,
   11 Civ. 763, 2011 WL 1544494 (S.D.N.Y. Apr. 25, 2011) .......................................... 9

*Picard v. Katz*,
   No. 11 Civ. 3605 (JSR), 2011 WL 4448638 (S.D.N.Y. Sept. 27, 2011) ............ passim

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
   440 B.R. 243 (Bankr. S.D.N.Y. 2010), *leave to appeal denied*, 2011 WL
   4448638 (S.D.N.Y. Aug. 31, 2011) .............................................................................. 5

*Walker, Truesdel, Roth & Assocs. v. The Blackstone Group, L.P. (In re Extended Stay)*,
   Nos. 11 CV 5394 (SAS) ............................................................................................... 5

**STATUTES**

11 U.S.C. § 502(d) ................................................................................................................ 8

11 U.S.C. § 546(e) ........................................................................................................ passim

11 U.S.C. § 548(a)(1)(A) .................................................................................................. 5, 6

11 U.S.C. § 548(c) ............................................................................................................ 7, 6

28 U.S.C. § 157(d) .............................................................................................. 1, 9

Defendants Alpha Prime Fund Limited ("Alpha Prime") and Senator Fund SPC ("Senator Fund" and, together with Alpha Prime, the "Defendants") respectfully submit this reply memorandum of law in further support of their motion (the "Motion"), pursuant to 28 U.S.C. § 157(d), to withdraw from the Bankruptcy Court the reference of this adversary proceeding brought by Irving H. Picard (the "Trustee"), trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"). The substantial questions of non-bankruptcy federal law that are implicated by the Trustee's adversary proceeding mandate withdrawal of the reference.

## PRELIMINARY STATEMENT

As set forth in the Motion, adjudication of this case will require the Court "to engage in significant interpretation" of the interplay among SIPA, the Bankruptcy Code and various securities laws and regulations. Specifically, the Motion implicates the following issues:

- Whether the interplay between SIPA and other federal securities laws and the "safe harbor" provided by ssection 546(e) of the Bankruptcy Code presents a question of mandatory withdrawal. The Trustee and SIPC ignore entirely this Court's prior decisions withdrawing the reference "in order to undertake the 'significant interpretation' of securities law necessary to resolve [this question]." *Picard v. Flinn Invs.,* LLC, No. 11 Civ. 5223 (JSR), 2011 WL 5921544, at *3-*4 (S.D.N.Y. Nov. 28, 2011); *Picard v. Katz*, No. 11 Civ. 3605 (JSR), 2011 WL 4448638, at *2-3 (S.D.N.Y. Sept. 27, 2011).

- Whether securities investors, like Defendants, whose custodian operated an account with a registered broker, like BLMIS, has an affirmative and retroactive duty – and, if so, to whom – to investigate their brokers and detect "red flags" and "indicia of fraud." Again, the Trustee and SIPC disregard this Court's conclusion that identifying the source and scope of this alleged duty presents a withdrawable question. *Flinn*, at *3; *Katz*, at *4-5.

- Whether the Trustee's efforts via the Bankruptcy Code to disallow the SIPA claims of Alpha Prime and Senator presents a withdrawable question. Yet again, the Trustee and SIPC overlook this Court's prior

1

finding that such analysis requires the interpretation of both SIPA and the Bankruptcy Code.  *Katz*, at *15-16.

In their opposition briefs, the Trustee and SIPC ignore the pertinent inquiry: whether withdrawal of the reference is mandatory because of the substantial material consideration of non-bankruptcy federal laws raised by their positions.  Instead, the Trustee and SIPC essentially contend that because: (a) SIPA provides them with authority to prosecute the asserted causes of action; and (b) this proceeding is within the Bankruptcy Court's "core" jurisdiction (and Alpha Prime and Senator filed proofs of claim), this case should not be removed to the District Court.  These arguments miss the mark.  If a court must consider both title 11 and other federal laws – as it must here - then mandatory withdrawal applies, regardless of whether the case falls within a "core" proceeding or a party has filed a proof of claim.  Accordingly, the Court should grant the Motion and withdraw the reference.

## ARGUMENT

The Trustee's and SIPC's arguments require substantial and material consideration of SIPA, which alone mandates withdrawal, and of other securities laws.  Withdrawal is also mandatory because the Trustee's and SIPC's interpretations cause SIPA to conflict with the other securities laws and with the Bankruptcy Code.

**I.   THIS COURT MUST ENGAGE IN SIGNIFICANT INTEPRETATION OF WHETHER SIPA CONFLICTS WITH SECTION 546(e) OF THE BANKRUPTCY CODE**

The resolution of the Trustee's claim will necessarily require significant interpretation of SIPA to determine whether the section 546(e) "safe harbor" in the Bankruptcy Code applies under SIPA.

2

nydocs1-980507.1

This Court has held previously that, with respect to BLMIS-related disputes, the question of whether "[section] 546(e) of the Bankruptcy Code prevents the Trustee from avoiding transfers as fraudulent except under [section] 548(a)(1)(A) of that Code" presents a "fully-withdrawable issue." *See Flinn*, 2011 WL 5921544, at *3; *see also Katz*, 2011 WL 4448638 at *2-3. As set forth in the Motion, Defendants here, similar to the *Katz* and *Flinn* defendants, intend to argue on a motion to dismiss that Counts 1 and 4 through 9 of the Complaint should be dismissed because the "transfers" at issue are "settlement payments" by or to a "financial institution" "in connection with" a "securities contract." See, the Motion at pp. 9-10. Accordingly, the safe harbor of 11 U.S.C § 546(e) precludes the Trustee from maintaining these claims.

The Trustee will undoubtedly raise in response to a motion to dismiss arguments that can only be resolved through significant interpretation of SIPA and other federal laws, including the securities laws. For example, in response to other motions to dismiss, the Trustee has argued that the section 546(e) safe harbor does not apply in a SIPA proceeding because it conflicts with SIPA's purpose. (See Ex. D to Trustee's Opposition to Herald Fund's Motion to Dismiss the Prior Adversary Proceeding, at 14, 16.) Indeed, SIPC raised this in its opposition. (See Opposition at p. 16) ("Moreover, to apply section 546(e) as contemplated by Movants is to contravene its purposes."). Further, while the Trustee and SIPC argue that, in order to determine whether section 546(e) includes within its scope securities transfers that did not occur, only interpretation of the Bankruptcy Code is required, the Court already has determined that "[t]he Bankruptcy Code provides little guidance on such a question, and a court must undertake 'significant interpretation' of securities law in order to resolve it." *See Flinn*,

3

2011 WL 5921544, at * 3; *Katz*, 2011 WL 4448638 at *2-3.  Indeed, the Court has recognized that "[b]y restricting a bankruptcy trustee's power to recover payments that are otherwise avoidable under the Bankruptcy Code, the safe harbor in [section] 546(e) stands at the intersection of two important national legislative policies on a collision course—the policies of bankruptcy and securities law."  *Id.* (internal quotations and citations omitted).  Both the Trustee and SIPC fail to address this Court's *Flinn* and *Katz* opinions, instead relying on other District Court and Bankruptcy Court decisions for support.  As this Court recognized, though, the quandary posed by section 546(e) is evident in that that "judges of this District have arguably resolved those questions differently.  Accordingly, as in *Katz*, the Court withdraws the reference to the bankruptcy court of the question of § 546(e)'s application."  *Flinn* at *4.

Neither the Trustee nor SIPC raise any other argument that requires this Court to deviate from its prior holdings that the application of the Section 546(e) safe harbor in these cases satisfies the standards for mandatory withdrawal.  For example, the Trustee claims that Defendants cannot avail themselves of section 546(e)'s safe harbor because the Trustee has alleged that these defendants are not "innocent investors"; rather, they had knowledge of BLMIS's actions.  Opposition at p. 14.  The Trustee is putting the cart before the horse.  This argument regarding the merits of the Trustee's claims is irrelevant to whether this Court will need to engage in a significant interpretation of SIPA and other securities laws to determine whether section 546(e) applies, as demonstrated by the fact that this Court has withdrawn the reference to decide this issue in other cases where the Trustee has alleged that the defendants were not "innocent."  *See, e.g., Katz*, 2011 WL 4448638, at *2-3.  In fact, in *Katz*, the Court

not only withdrew the reference, it applied section 546(e) to dismiss all but a claim for actual fraudulent transfers under section 548(a)(1)(A) of the Bankruptcy Code. *See Katz*, 2011 WL 4448638, at *4.[1]

Similarly, arguments raised by SIPC as to how the term "settlement payment" should be construed, or whether applying section 546(e) as Defendants contemplate would "contravene" the purposes of SIPA and the Bankruptcy Code, also go to the merits of Alpha Prime's and Senator's section 546(e) argument, not to whether section 546(e)'s application presents a withdrawable issue. (See SIPC Opp. at 16-17.) Again, though, this Court already has held that interpretation of what the statutory language of section 546(e) means in the context of BLMIS-related cases, particularly phrases like "in connection with a securities contract," "requires novel and significant interpretation of the securities law." *Flinn*, 2011 WL 5921544, at *4.

Thus, it is clear that the Court will need to engage in substantial interpretation of SIPA and other non-bankruptcy federal laws and their interplay with the Bankruptcy Code; accordingly, mandatory withdrawal applies here.[2]

---

[1] The Trustee's citation to oral argument in *Picard v. Avellino* is irrelevant. The Trustee has not alleged that Defendants had actual knowledge of the Ponzi scheme. The Trustee has instead alleged that Defendants were willfully blind to "indicia of fraud" and "red flags." Nonetheless, this goes to the question of whether the application of section 546(e) involves substantial consideration of federal non-bankruptcy law, which, as demonstrated throughout, presents a basis for mandatory withdrawal.

[2] The Trustee's reliance on *Walker, Truesdel, Roth & Assocs. v. The Blackstone Group, L.P. (In re Extended Stay)*, Nos. 11 CV 5394 (SAS) through Nos. 11 CV 5397 (SAS), 2011 WL 5532258, at *7 (S.D.N.Y. Nov. 1, 2011), is unpersuasive as it did not involve a SIPA Proceeding and there's no relation to the instant matter. As set forth above and in the Motion, and as recognized by this Court, the issues here will require the Court to engage in significant interpretation of SIPA and other federal securities laws and regulations. The Trustee's reliance on *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010), *leave to appeal denied*, 2011 WL 4448638 (S.D.N.Y. Aug. 31, 2011) is also curious. There, Judge Lifland concluded that

5

## II. THIS COURT MUST ENGAGE IN SIGNIFICANT INTEPRETATION OF WHETHER SIPA OR OTHER FEDERAL SECURITIES LAW IMPOSES A RETROACTIVE DUE DILIGENCE OBLIGATION

The resolution of the Trustee's claim will necessarily require significant interpretation of SIPA and other federal securities law to determine whether SIPA imposes an affirmative and retroactive duty.

Defendants submit that no federal securities law, including SIPA, imposes a duty on customers like Defendants to independently investigate whether the broker is running a Ponzi scheme. Nevertheless, this Court already has concluded that consideration of this question turns on both SIPA and other federal securities laws applicable at the time in question and, accordingly, presents another issue for mandatory withdrawal. *See Katz*, 2011 WL 4448638, at *5.

Here, whether and to what extent a duty exists is implicated in the Trustee's cause of action for actual fraud under 11 U.S.C. § 548(a)(1)(A) in Count 3 of the Complaint, which is subject to a good-faith defense under section 548(c), as well the claim in Count 12 for equitable subordination, which turns on proof of inequitable conduct by Defendants. With respect to both claims, the Trustee and SIPC characterize Defendants as "bad-faith actors", "not typical innocent BLMIS customers", who willfully "overlooked glaring red flags" and "other indicia of fraud" that these Defendants had an obligation to investigate. (See Opposition at 13, 14) Essentially, though, this is an admission that resolution of what obligation, if any, Defendants had to inform itself of these supposed "red flags" and "indicia of fraud" at the time of the targeted securities

---

section 546(e) was "incompatible with SIPA" and, thus, did not apply. *Merkin*, 440 B.R. at 267-68. *Merkin* itself illustrates the basis for withdrawal regarding the application of section 546(e) in a SIPA case.

6

nydocs1-980507.1

transactions will require significant interpretation of non-bankruptcy law, compelling mandatory withdrawal.

In an effort to resolve this conundrum, the Trustee simultaneously argues that any due diligence obligation imposed on Defendants "has nothing at all to do with any interpretation of SIPA or other non-bankruptcy federal law." (Opposition at 13). But this Court previously rejected this very argument, noting that "willful blindness is a function, in part, of what there was a duty to look at" and that it is not "self-evident at all that the bankruptcy law sets the parameters of the duty of inquiry that a customer in a securities brokerage investment situation has." *See Katz*, No. 11 Civ. 3605 (S.D.N.Y. July 12, 2011) (Transcript of Oral Argument at 10, 32.) There, the Court withdrew the reference to decide this issue, noting the "more than plausible argument that the duty of inquiry of [a brokerage customer] in a securities context is governed by securities law and cannot be overridden after the fact by the bankruptcy law or by the interpretation of a non-bankruptcy law, SIPA, being asserted by the trustee." *Id.* at 33.

The Trustee's argument that whether Defendants can each establish a good faith defense under 11 U.S.C. § 548(c) depends solely on "a straightforward analysis of the Bankruptcy Code," (Opposition. at 13), is similarly flawed. Whether Defendants took the transfers "for value" also presents a withdrawable question here, because the Trustee seeks to avoid transfers of principal, not fictitious profits. Therefore, this case presents the issue of whether the transfers to Defendants were made on account of "antecedent debts" of BLMIS and, if so, whether those transfers can even serve as the subject of an actual or constructive fraudulent conveyance claim. This Court already has held that such an inquiry "'raises significant' interpretation of the

7

securities laws" and, thus, presents yet another question for mandatory withdrawal. *Flinn*, 2011 WL 5921544, at *3.

### III. THIS COURT MUST ENGAGE IN SIGNIFICANT INTEPRETATION OF SIPA TO DETERMINE WHETHER DEFENDANTS' CUSTOMER CLAIMS SHOULD BE DISALLOWED

The Trustee, in Count 11, seeks to disallow the Defendants' SIPA customer claims. Those efforts provide yet another reason why mandatory withdrawal is implicated. As this Court has recognized, "while section 502(d) of the Bankruptcy Code would support disallowance of the claims made against a bankruptcy estate by a party who received transfers that were void or voidable, this section is overridden in the context of a SIPA trusteeship by section 78fff-2 of SIPA, which provides that securities customers who have received avoidable transfers may still seek to pursue those transfers as creditors of the SIPA estate." *Katz*, 2011 WL 4448638 at *15-16 (*citing* 15 U.S.C. § 78fff-2(c)(3)). Thus, the Trustee's attempt to disallow Defendants' customer claims will require the substantial interpretation of SIPA and its interaction with the Bankruptcy Code, thereby presenting a question for mandatory withdrawal. Indeed, withdrawal of this issue is even more appropriate given SIPC and the Trustee's improper attempt to use Defendants' filing of proofs of claim as a basis for denying mandatory withdrawal. (*See infra* at § IV.)

### IV. NEITHER ALPHA PRIME AND SENATOR'S FILING OF SIPA CUSTOMER CLAIMS NOR THE EXISTENCE OF "CORE" ISSUES BARS WITHDRAWAL OF THE REFERENCE

The Trustee and SIPC's argument in their opposition that the claims against Alpha Prime and Senator are "core" bankruptcy matters does not alter the conclusion that withdrawal here is mandatory. Courts frequently withdraw the reference of "core" matters because "[w]hether or not [the matter being withdrawn] is a core

8

proceeding is irrelevant" to the question of mandatory withdrawal.  *In re Boston Generating, LLC*, 10 Civ. 6528 (DLC), 2010 WL 4288171, at * 5 (S.D.N.Y. Nov. 1, 2010) (rejecting argument that mandatory withdrawal was not proper for "core" claims); *see also In re Dana Corp.*, 379 B.R. 449, 459 (S.D.N.Y. 2007) (granting motion for mandatory withdrawal of "core" matter concerning resolution of bankruptcy claim objections); *Bear, Stearns See. Corp. v. Gredd*, 01 Civ. 4379, 2001 WL 840187, at *3-4 (S.D.N.Y. July 25, 2001) (withdrawing core avoidance claims because resolution involved substantial and material consideration of SEC rule that potentially barred avoidance).

Moreover, Alpha Prime's and Senator's filing of a SIPA claim in the BLMIS liquidation is irrelevant.  If the conditions for mandatory withdrawal exist, this Court cannot ignore its statutory responsibility to withdraw the reference.  See 28 U.S.C. § 157(d) (providing that the district court "shall" withdraw a proceeding if the mandatory withdrawal standards are met); *see also In re Chateaugay Corp.*, 108 B.R. 27, 28 (S.D.N.Y. 1989) ("Congress intended that [mandatory] withdrawal be required when [the] standard is met, and that it not be a matter within the district court's discretion."); *accord Picard v. HSBC Bank PLC*, 11 Civ. 763, 2011 WL 1544494, at *2 (S.D.N.Y. Apr. 25, 2011) (withdrawal "mandate[d]" when necessary requirements satisfied).  In fact, not only has the Bankruptcy Court not yet determined Defendants' claim, but, as discussed above, the Trustee has asked the Court to disallow that claim.  (See supra at § III.) Thus, as this Court has recognized, "mandatory withdrawal must be made," Defendants' submission of proofs of claim notwithstanding.  *Flinn*, 2011 WL 5921544, at *1 n.2; *see also In re Dana Corp.*, 379 B.R. at 450, 459 (finding withdrawal of the reference

9

mandatory even though the movant submitted to Bankruptcy Court's jurisdiction by filing proof of claim); *In re Adelphia Commc'ns Corp.*, No. 03 MDL 1529 (LMM), 2006 WL 337667, at * 1, 3, 5 (S.D.N.Y. Feb. 10, 2006) (withdrawing the reference on mandatory and permissive grounds even though defendants submitted proofs of claim).

## **CONCLUSION**

Withdrawal of the reference is mandatory here because this case requires the Bankruptcy Court to engage itself in the intricacies of non-bankruptcy law as opposed to routine application of that law.  In view of the foregoing, and for the reasons set forth in the Motion, Defendants respectfully request that the Court enter an order withdrawing the reference of this action to the Bankruptcy Court.

Dated:   December 22, 2011
         New York, New York

                                        ANDERSON KILL & OLICK, P.C.

                                        */s/ Todd E. Duffy*
                                        By:   Todd E. Duffy
                                              Dennis J. Nolan
                                        1251 Avenue of the Americas
                                        New York, New York 10020
                                        Tel: 212-278-1000
                                        Fax: 212-278-1733
                                        *Attorneys for Defendants Alpha Prime Fund Limited and Senator Fund SPC*